Ronald M. SPANN, Appellant,

v.

Francis X. McKENNA, Command Counsel, United States Army Materiel Development and Readiness Command; Gen. John R. Deane, Jr., former Commander, United States Army Materiel Development and Readiness Command; Col. Peter B. Kenyon, former Commanding Officer, Picatinny Arsenal; Clifford Alexander, Jr., Secretary of the Army; United States of America; Lt. Gen. George Sammet, Jr., former DARCOM Commanding Officer; Gen. John R. Guthrie, DARCOM Commanding Officer; Major General Bennett L. Lewis, Commanding Officer, ARRADCOM, Appellees.

No. 79–1700.

United States Court of Appeals, Third Circuit.

Argued Jan. 8, 1980.

Decided Feb. 8, 1980.

---

Christopher R. Wood, Rafano & Wood, South River, N. J., Robert M. White (argued), White & Selkin, Norfolk, Va., for appellant.

Robert J. Del Tufo, U. S. Atty., Eric L. Chase, Lorraine S. Gerson (argued), Asst. U. S. Attys., Newark, N. J., Burt Smith, Dept. of the Army, U. S. Army Materiel Development & Readiness Command, Alexandria, Va., for appellees.

Before SEITZ, Chief Judge, and ADAMS and WEIS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

The appellant, Ronald M. Spann, is a civilian employee of the Department of the Army. In this lawsuit, he challenges a personnel action as unlawful under the Army's civilian personnel regulations.

Spann has been employed since 1969 at the Army's Picatinny Arsenal, which is located in Dover, New Jersey. The Arsenal is under the command of the U.S. Army Materiel Development and Readiness Command (DARCOM). Spann began at the Arsenal as a chemical engineer. In January 1974, after graduating from law school and gaining admission to the New Jersey bar, he was appointed as a patent advisor, a position in the legal office of the Arsenal which involves technical work on patent matters. Thereafter, he sought appointment as an attorney advisor in the same office. That position carries the same grade and salary level as patent advisor but would allow him to do legal work on patent matters. However, Spann has continually failed to obtain the consent of DARCOM's Command Counsel, Francis X. McKenna, whose approval usually is necessary for appointment to attorney positions within DARCOM.

Spann's opportunity seemed to have arrived in the spring of 1976. On April 12, McKenna sent a memorandum to each of the chief counsels under DARCOM's command revising some of his procedures. He advised them: "This action will permit you to transfer your attorneys and patent advisors from one job sheet (position) to another, *at the same grade level,* without my prior approval." (emphasis in original). The Chief Counsel at Picatinny, John J. Crawley, construed this statement as authority to transfer personnel between the positions of attorney advisor and patent advisor without McKenna's approval. With this authority, he appointed Spann as attorney advisor, effective June 13, 1976. Spann re-

ceived documentation of the appointment on a Civil Service Standard Form 50. This form provides the basic documentation for most federal personnel actions. *See* Federal Personnel Manual 296–5–2 (1969).

McKenna was not pleased to hear of this appointment. In two letters to Crawley, he explained that his April 12 memorandum did not confer authority to transfer between the two positions and ordered him to cancel the appointment immediately. Crawley complied, cancelling Spann's appointment as attorney advisor and reappointing him as patent advisor, on August 25. The cancellation and reappointment were documented on Standard Forms 50. Spann received no opportunity to object to these actions in advance.

The following month, Spann filed a grievance petition contesting the cancellation. In accordance with the Army's grievance procedures, the civilian personnel officer at the Picatinny Arsenal referred the grievance to the U.S. Army Civilian Appellate Review Agency (USACARA). A grievance examiner from USACARA's regional office, USACARO Newark, was appointed.

The grievance examiner issued a report and a decision on December 30. She concluded that the cancellation and reassignment was defective because of Crawley's failure to comply with an Army personnel regulation governing the involuntary reassignment of civilian employees. Civilian Personnel Regulation (CPR) 335.1–5(c). She ordered that Spann be restored to the position of attorney advisor, with his appointment given effect retroactively to June 13, 1976. On the authority of another Army personnel regulation, CPR 771.3–11(a), she denominated her decision as final and binding upon DARCOM.

DARCOM officials did not accept this decision. McKenna listed several objections to the decision in a letter to the Army's Director of Civilian Personnel, BenB. Beeson. DARCOM's personnel officer, Brigadier General Lawrence S. Wright, wrote a similar letter. Beeson passed their objections on to the USACARA Administrator in Washington, D.C., and to the General Coun-sel of the Department of the Army. The USACARA Administrator concurred in the grievance examiner's decision and asserted that it was final and binding. The General Counsel disagreed, finding the decision erroneous. She instructed Beeson to have it revised.

On June 10, 1977, Beeson returned the grievance examiner's decision to USACARA for revision. At the request of USACARO Newark, Beeson then requested an opinion from the Office of the General Counsel, U.S. Civil Service Commission, on whether the cancellation of Spann's appointment was carried out in violation of certain procedural requirements applicable in cases of adverse action against certain classes of civil servants. 5 U.S.C. §§ 7511, 7512 (1976); 5 C.F.R. pt. 752 (1979). That office found no violations. On August 22, 1977, the Chief of USACARO Newark amended the grievance examiner's decision to make it a recommendation rather than a final and binding decision.

To no one's surprise, McKenna promptly rejected the recommendation and upheld the cancellation. Spann appealed to the General Counsel of the Department of the Army, who also upheld the cancellation. Spann now seeks to have the cancellation set aside with this suit against the United States, the Secretary of the Army, McKenna, and several Army officers. He charges them with violating federal statutes and regulations in both the cancellation itself and in the processing of his grievance. The district court had jurisdiction under 28 U.S.C. § 1331 (1976). The court granted summary judgment for defendants on all of Spann's claims of violations.

Spann's first claim is that DARCOM officials violated an Army personnel regulation in failing to treat the grievance examiner's decision as final and binding. The authority for the grievance examiner's denomination of her decision as such is the following regulation:

If at any stage of an inquiry the USACARA examiner establishes the existence of a regulatory or procedural defect which requires reversal of the action

grieved, the examiner may discontinue the inquiry, prepare a report of findings and decision on that issue, and forward the case to the activity commander with instructions that the action be reversed. Such a decision is final and binding on the concerned commander.

Civilian Personnel Regulation (CPR) 771.3–11(a). The grievance examiner invoked the authority of this regulation after finding a procedural defect; a violation of CPR 335.-1–5(c), which she found applicable. That regulation requires that an involuntary reassignment be preceded by notice to the employee, a statement of reasons for the action, and an opportunity for the employee to reply.

If CPR 771.3–11(a) has the effect of imposing complete finality on the grievance examiner's decision, as the words "final and binding" plainly suggest, then the type of response to a decision that DARCOM officials displayed in this case was precluded. One apparent purpose of this regulation is to provide speedy relief to employees affected by procedural violations. Where it applies, it not only cuts off appeals from the grievance examiner's decision but also permits the examiner to terminate an inquiry and order relief immediately upon finding such a defect. The regulation also serves to minimize the time and resources spent litigating procedural issues. The response of appellees in deferring action on the grievance examiner's decision for several months until they successfully prevailed upon USACARA officials to revise the decision directly contravenes these purposes. Thus, if CPR 771.3–11(a) calls for complete finality, appellees have violated its terms.

The district court based its summary judgment for defendants on a narrower construction of finality under CPR 771.3–11(a). It held that "this limit on reviewability exists only for findings at least arguably correct." The court feared that without this restriction "a patently erroneous

decision, if styled procedural, would be insulated from review." Parenthetically, neither the district court nor appellees have contested the grievance examiner's conclusion that a violation of CPR 335.1–5(c) is a procedural rather than a substantive defect.

The district court's interpretation conflicts with the plain meaning of "final and binding," which is a complete preclusion of review, even review under a restricted standard like arguable correctness. Because human decisionmakers are fallible, any provision for final and binding decisions will insulate some erroneous decisions from review. When draftsmen choose the words "final and binding," they must contemplate this result.

The consequence of erroneous decisions in the situation covered by CPR 771.3–11(a) is not so undesirable that it suggests that the draftsmen intended to qualify the meaning of "final and binding." The regulation imposes finality only on a finding "of a regulatory or procedural defect." Findings of substantive defects, by contrast, result only in recommendations to responsible officials. *See* CPR 771.3–13. Since the grievance examiner's final and binding decision does not affect the substantive merits of any personnel action, the responsible official may repeat the action if he proceeds in accordance with the regulations and procedures that the grievance examiner has found applicable.[1] There is no reason to think that an erroneous decision in this situation would cause the Army more than minimal difficulties. On the other hand, the complete finality of these decisions furthers the objectives, already noted, of speedy relief for the aggrieved employee and minimal litigation on procedural issues. The overall effect of complete finality for decisions under CPR 771.3–11(a) seems entirely rational. Therefore, we see no reason for looking past the plain meaning of the terms "final and binding" and reviewing

---

1. The Administrator of USACARA made this point in her letter to Ben B. Beeson:

The Newark Appellate Review Office is not suggesting that management does not have the authority to reassign the grievant back to the Patent Advisor position. . . . [I]f a decision is made to involuntarily reassign the grievant to the Patent Advisor position, the proper procedures must be followed.

the merits of the grievance examiner's finding of a CPR 335.1–5(c) violation.

 Appellees offer an alternative ground for affirming the judgment of the district court. They assert that Crawley had no legal authority to appoint Spann to the position of attorney advisor and that the appointment was therefore "void *ab initio.*" They draw two conclusions from this proposition. First, they say that Army officials may correct any such unauthorized and void appointments without complying with the procedural requirements of CPR 335.1–5(c). We believe that this argument addresses the merits of the grievance examiner's finding that the regulation applies to the cancellation of Spann's appointment. That finding is final and binding on the officials. Second, they say that the appointment may not receive "official recognition," which they say would be the result of judicial enforcement of the grievance examiner's decision. We do not see that judicial enforcement would have this effect. The examiner made no finding on the validity of the initial appointment or on any other issue related to the substantive correctness of the cancellation of that appointment. Nor do we. She decided only that an involuntary reassignment of personnel, even if done to correct an unauthorized appointment, must comply with CPR 335.1–5(c). We do not see how enforcement of her requirement that the Army follow its own regulation for reassignment of personnel gives any judicial approval to the appointment that appellees wish to cancel.[2]

 We hold that the district court applied an incorrect construction of CPR 771.-3–11(a). As a consequence, the court erroneously granted summary judgment for defendants on Spann's claim that DARCOM officials violated Army civilian personnel regulations when processing his grievance. The district court based its consideration of Spann's remaining claims on the premise that the grievance examiner's decision was not final and binding. Because that premise is incorrect, we need not consider the court's treatment of the remaining allegations.

The judgment of the district court will be vacated and the case remanded for disposition consistent with this opinion.

---

**2.** Judge Weis agrees with the reasoning of the majority, understanding that the court:

    1. Does not decide that the examiner's ruling on the application of CPR 335.1–5(c) was correct, and

2. Does not decide that CPR 335.1–5(c) applies to transfers of persons in circumstances similar to those present in this case.